[No. 35774. En Banc. August 30, 1962.]

FRANK S. HOLMES et al., Appellants, v. CARL RAFFO et al., Respondents.*

*Reported in 374 P. (2d) 536.

*Roehl & Dalquest*, for appellants.

*Livesey, Kingsbury & Livesey*, for respondents.

HUNTER, J.—This is an action by the plaintiffs, Frank S. Holmes and Neva A. Holmes, his wife, to recover damages from the defendant, Karl Raffo, a minor, and from the defendant's parents, Carl Raffo and his wife, for injuries resulting from an automobile collision.

Mrs. Holmes' version of the accident was as follows: On

the morning of August 20, 1959, she was driving her 1956 Ford automobile in a westerly direction on Smith Road, in Whatcom County, en route to the Whatcom County fair. She observed a Packard car, driven by the defendant minor, approximately 500 feet in the distance and approaching in an easterly direction at a speed of about 45 miles per hour. At that time, she noticed the other car begin to cross the center line into her lane of travel, whereupon she honked her horn and decreased her speed. The approaching car continued to pull over into her lane without giving any signal. Mrs. Holmes then drove her car as far as possible to the right toward a ditch and was off the roadway when she was struck with terrific force by the Raffo car.

The plaintiffs claimed damages for personal injuries sustained by Mrs. Holmes; for expenses incurred and to be incurred for her medical, hospital and nursing care; for her loss of earnings; for damages to the automobile, and for loss of use thereof.

The defendant minor's explanation of the accident was that he was momentarily blinded by the morning sun, and the collision occurred while he was adjusting his sun visor. His defense was that of unavoidable accident on his part and contributory negligence of Mrs. Holmes who, he alleged, failed to keep a proper lookout. The defendant parents interposed the defense that their son was emancipated at the time of the accident, that the Packard car was owned solely by him, because payments for the car were to be made from his earnings, and that it was not operated for their benefit or in their behalf. They also alleged the contributory negligence of Mrs. Holmes.

The case was submitted to the jury on all issues except on the issue of damages for loss of use of the plaintiffs' automobile. The jury returned a verdict in favor of the defendant parents and against the defendant minor, awarding the plaintiffs judgment for damages in the sum of $3,000. The plaintiffs moved for a new trial and filed an alternative motion for an increase in the verdict. The motions were denied, and the trial court entered judgment in accordance with the verdict. The plaintiffs appeal.

The plaintiffs (appellants) first contend the trial court erred in denying their offer of proof as to the necessity of obtaining someone to care for Mrs. Holmes and to do her housework after her discharge from the hospital. Either Mrs. Holmes or her husband would have testified that it was necessary for this care to be furnished and for work to be performed from September 5th to April 1st, and would have testified as to who was employed, the type of help employed, and the type of work done.

■ The defendants (respondents) argue that if this was error it was not prejudicial for the reason that the testimony was cumulative, since Mrs. Holmes had already testified as to these matters. We have examined the record and find that Mrs. Holmes had testified substantially to the same matters contained in the offer of proof as follows:

"Q Mrs. Holmes, you have told us that you spent about a month in bed at home after you were discharged from St. Joseph's. A Yes. Q Would you tell us how you progressed after that with regard to getting up and doing housework and that sort of thing? A Oh, I was not allowed to do anything. I could make no decisions. I had to have all my housework done. Q Have you started now to do your housework? A Yes, I have, with the help of my daughter. Q Since when, Mrs. Holmes, have you been undertaking to do your housework? A Oh, about the last couple of months. . . ."

The record discloses that the period of time referred to was between early September until April, or the latter part of March.

Mrs. Holmes' testimony in support of the proof offered would have been repetitious. The testimony of the husband as to the same matters would have been cumulative and as a party to the action would have added little to the credibility of her testimony. Moreover, the testimony was not disputed.

The plaintiffs were not denied a fair consideration by the jury as to the extent of Mrs. Holmes' injuries by a denial of their offer of proof. Assuming the court erred, it was not prejudicial.

The plaintiffs assign error to the failure of the trial court to give the following instruction:

"You are instructed that the emancipation of a minor will not be presumed, but must be proved, and that the burden of proof is on the defendants.

"Emancipation must be proved by evidence that is clear, cogent, and convincing. This is a higher degree of proof than is required on the other issues in the case. The words 'clear, cogent, and convincing,' mean something more than a mere preponderance of the evidence."

■ The degree of proof required to establish the emancipation of a minor child, and the reason therefor, was stated in *American Products Co. v. Villwock,* 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010 (1941):

" . . . The right, as well as the duty, to exercise parental control and to provide parental care and support, is of such paramount importance and necessity, and is so thoroughly recognized in law and by society in general, *that any divesture of that right and that duty must be proved by evidence that is clear, cogent, and convincing."* (Italics ours.)

Also, see *DeLay v. DeLay,* 54 Wn. (2d) 63, 337 P. (2d) 1057 (1959); *Foran v. Kallio,* 56 Wn. (2d) 769, 355 P. (2d) 544 (1960); 39 Am. Jur., Parent and Child § 64.

The plaintiffs contend that instruction No. 20, given by the court, was insufficient without giving their proposed instruction to advise the jury of the burden that was placed upon the defendants to sustain their defense of emancipation.

In considering this contention, it is necessary to examine the trial court's instructions in their entirety as to the proof required by the defendants to establish that their minor son was emancipated at the time of the accident.

The court's instruction No. 5 defined "fair preponderance of the evidence" and "burden of proof" as follows:

"The term 'fair preponderance of the evidence' means the greater weight of credible evidence in the case. It does not necessarily mean the evidence of the greater number of witnesses, but means that evidence which carries the greater convincing power to your minds.

"The term 'burden of proof' means the burden of producing evidence which fairly preponderates over the opposing evidence."

The court's instruction No. 6 on burden of proof stated:

"The burden of proof is on the plaintiff to establish, by a fair preponderance of the evidence, the material allegations of his complaint that are denied by the defendants in their answer.

"Likewise, the *burden of proof is on the defendants to establish, by a fair preponderance of the evidence, the material allegations of their affirmative defense.*" (Italics ours.)

The court's instruction No. 20, relative to the issue of emancipation, states:

" . . . The emancipation of a minor is not to be presumed; it must be proved by the party asserting it, and by evidence that is clear, cogent and convincing."

■■ We have held that the words "clear, cogent and convincing" mean something more than a mere preponderance of the evidence. *Lewis Pacific Dairymen's Ass'n v. Turner,* 50 Wn. (2d) 762, 314 P. (2d) 625 (1957); *Cheesman v. Sathre,* 45 Wn. (2d) 193, 273 P. (2d) 500 (1954). In the absence of an instruction advising the jury that "clear, cogent and convincing" proof is a higher degree of proof than a "preponderance of the evidence," the jury may well have been confused and assumed there was no distinction between these types of proof referred to, in light of the instructions given. Therefore, the plaintiffs were prejudiced by the jury's consideration of the issue of the defendant minor's emancipation without the benefit of the further instructions setting forth this distinction in the degree of proof required of the defendants, as proposed by the plaintiffs. This constituted reversible error.

The plaintiffs assign error to the trial court's failure to grant a new trial on the ground that the damages awarded were so inadequate as unmistakably to indicate the verdict must have been the result of passion or prejudice. The plaintiffs argue that the claimed special damages are beyond dispute and, alone, exceed the jury's award of $3,000.

The defendants contend this argument is unsound for the reason that a part of the alleged special damages is not beyond dispute.

An examination of the plaintiffs' claims for damages and the evidence in the record relating thereto discloses that the claims for medical and hospital expenses incurred and the cost of repairing the automobile, in the amount of $1,495.53, are established beyond dispute. Hence, we find that the jury must have awarded the remaining sum of $1,504.47 for some or all of the other alleged items of damages submitted for its consideration. These items consisted of loss of earnings, permanent bodily injury, pain and suffering and future medical and hospital expenses.

The evidence relating to future medical and hospital expenses and permanent bodily injury was in sharp dispute. The defendants' expert medical witness testified at the trial that, on the basis of his examination of the plaintiff Neva Holmes five days prior to the trial, she, at that time, did not have any apparent abnormalities or physical disabilities as a result of the collision. In view of this evidence, it is quite conceivable that the jury may not have allowed any amount for future expenses or permanent bodily injuries.

We next come to the items of pain and suffering and loss of earnings. With regard to the latter, the material evidence consisted of the following: Prior to the accident, Mrs. Holmes had worked full-time with her husband in their retail and wholesale meatcutting business. She testified that the union wage scale for meatcutters with her qualifications was $110 per week at the time of the accident and during the period of time that she was allegedly disabled. Mrs. Holmes testified that after the accident she was required to be in a hospital for a period of ten days, and for approximately one month after returning from the hospital the pain and injuries compelled her to remain in bed. This testimony was uncontroverted. She also testified that, at the time of trial, nine months after the accident, she was only able to return to work for one or two hours

per day and was not able to perform the ordinary duties of her work.

To corroborate this testimony, the plaintiffs produced two expert medical witnesses. Dr. Austin testified that his examinations after the accident revealed that Mrs. Holmes, as a result of the accident, sustained a sprain in the back region and injuries to ligaments in the vertebrae and to attendant nerve roots. Upon her release from the hospital, Dr. Austin directed that she wear a cervical collar for a two-month period, and also directed her to give up working in the plaintiffs' meat business for at least a two-month period. This testimony with regard to her injuries was corroborated by the plaintiffs' second medical witness, Dr. Keyes.

The evidence offered by the defendants which tended to refute the nature and extent of Mrs. Holmes' injuries was the testimony of the defendants' expert medical witness that, at the time of the trial, he found no existing appreciable disabilities resulting from the accident.

The medical testimony favorable to the plaintiff Mrs. Holmes established, at the most, that she was incapacitated for two and one-half months. The period of time following that was supported only by the word of Mrs. Holmes. Also, the claim of damages for the item of pain and suffering was largely based upon her testimony, and the jury was not bound by her testimony. Inasmuch as the jury may well have allowed nothing for permanent injuries and for future medical and hospital expenses, we cannot say, in view of this record, that a verdict of $1,504.47 for loss of earnings and pain and suffering is so inadequate as unmistakably to indicate that it was the result of passion and prejudice. The trial court did not err in refusing to grant a new trial on this ground contained in this assignment of error.

The plaintiffs next assign error to the trial court's failure to submit to the jury the issue of damages for the loss of use of the plaintiffs' automobile during the period of its repairs. The following testimony from the record represents the only evidence offered by the plaintiffs on this matter of damages:

"Q Mrs. Holmes, were you folks without the use of your automobile for any period of time while it was being repaired? A Yes. Q Can you tell us for how long? A A little over a month. Q You have asked in that connection for an item of damages because of the loss of use of the automobile? A Yes. Q Would you tell us what that is? A The amount? Q Yes, please. A $300. Q And would you tell us upon what you base that figure, please? A Well, if we would have rented a car, it would have been—is that what you want? Q Yes, please. A $200.00 plus 10 cents mileage. We drove our car approximately 2,000 miles a month. The rental company paid the gasoline. Q And that is your computation of what it would cost you to replace your automobile during that period, is that correct? A Yes. Q Now, Mrs. Holmes, did you folks in fact rent an automobile? A We did not. Q Previously for what purpose had your car been used? A Well, partially for business, coming into town. Q You say partially for pleasure? A Yes. Q During that period that the car was being repaired, you did without, largely? A Yes."

It further appears that the automobile in question was used for both business and pleasure; however, the plaintiffs did not offer any evidence relating to pecuniary losses suffered by reason of being deprived of their automobile in the family business.

The plaintiffs argue that *Norris v. Hadfield,* 124 Wash. 198, 213 Pac. 934, 216 Pac. 846 (1923), is direct authority which supports their contention that the trial court erred in refusing to submit the issue to the jury, since evidence of rental value of a substitute automobile was admitted at the trial. We do not read the *Norris* case as a holding that where a pleasure car is negligently injured and must undergo a period of repairs, the rental value of another automobile, which would serve the same purposes, is *the measure of damages* for loss of use in such a case. At most, the language in the *Norris* case is dictum since there was no proof whatsoever as to the use value of the automobile in that case.

■ The rule with respect to loss of use of an automobile is that the owner may recover, as general damages, the use value of which he is deprived because of the de-

fendant's wrongful act. *Stubbs v. Molberget,* 108 Wash. 89, 182 Pac. 936, 6 A. L. R. 318 (1919); *Jellum v. Grays Harbor Fuel Co.,* 160 Wash. 585, 295 Pac. 939 (1931); *Norris v. Hadfield, supra; Western Mach. Exch. v. Northern Pac. R. Co.,* 142 Wash. 675, 254 Pac. 248 (1927). Damages to compensate for this loss may only take into account the reasonable time in which the automobile should have been repaired. 5 Berry, Law of Automobiles § 5.233 (1935); *Madden v. Nippon Auto Co.,* 119 Wash. 618, 206 Pac. 569 (1922).

Although there is not complete unanimity in the case law of all jurisdictions, the majority of the cases recognize the plaintiff's right to recover for loss of use whether the automobile which has been injured has been used by its owner for business, for family purposes or simply for pleasure. *Norris v. Hadfield, supra; Cook v. Packard Motor Car Co. of New York,* 88 Conn. 590, 92 Atl. 413 (1914); *Johnson v. Scholz,* 93 N. Y. S. (2d) 334, 276 App. Div. 163 (1949); *Eschinger v. United Mut. Fire Ins. Co.* (Mun. Ct. App., D. C.), 61 A. (2d) 725 (1948); *Malinson v. Black,* 83 Cal. App. (2d) 375, 188 P. (2d) 788 (1948).

A definitive statement of the guiding principle involved in cases of this nature appears in a concurring opinion to the decision in *Cook v. Packard Motor Car Co. of New York, supra:*

"Since compensation for injury to personal property is the cardinal rule for the measure of the damage, there would seem to be no room for affording a recovery for a deprivation of the use of an automobile devoted to business, and denying it to one devoted to pleasure uses. The value of the use of personal property is not the mere value of its intended use but of its present use. The value of an article to its owner, as Sedgwick points out, lies in his right to use, enjoy and dispose of it. These are the rights of property which ownership vests in him, and whether he, in fact, avails himself of his right of use does not in the least affect the value of his use. 1 Sedgwick on Damages (9th Ed.) § 243a. His right to the use of his property is not diminished by the use the owner makes of it. His right of user, whether for business or pleasure, is absolute, and whoever injures

him in the exercise of that right renders himself liable for consequent damage. . . ."

The matter which creates the difficulty in such cases and which is the point at issue in relation to this assignment of error is that of proof of damages. It is on this that some courts of other jurisdictions take divergent views. The perplexing problem of proof is presented more in the case of pleasure automobiles than business automobiles because of the increased difficulty of placing a monetary value upon the use value to the owner.

It follows from the principle set forth in the above quote that the right to compensation for loss of use is not dependent upon the owner having hired a substitute automobile during the period when his automobile was being repaired. As stated in *Pittari v. Madison Ave. Coach Co.,* 188 Misc. 614, 68 N. Y. S. (2d) 741 (1947),

"The general rule is that damages for loss of use of an automobile may be allowed against one who negligently injures it, although the owner uses it only for pleasure and despite the failure of the owner to hire another automobile to take the place of the injured vehicle. . . ."

We are in agreement with this rule. If we were to hold that a plaintiff who has lost the use of his pleasure automobile, which itself does not have a market rental value or pecuniary value to a business, but which does have a usable value to the plaintiff, cannot be compensated because he has not hired a substitute automobile, we would be placing upon recovery a condition of financial ability to hire another automobile to take the place of the injured automobile. The law cannot condone such a condition. He would be denied compensation for his inconvenience resulting from the defendant's wrongful act. *Pittari v. Madison Ave. Coach Co., supra; Naughton Mulgrew Motor Car Co. v. Westchester Fish Co.,* 105 Misc. 595, 173 N. Y. S. 437 (1918).

We now hold that, where, as here, a plaintiff has not rented a substitute automobile, he is nevertheless entitled to receive, as general damages in the event liability is established, such sum as will compensate him for his in-

convenience. Proof of what it reasonably would have cost to hire a substitute automobile is sufficient evidence to carry this item of damages to the jury, but is not the measure of such damages. It is relevant evidence in determining the general damages for inconvenience resulting from loss of use of an automobile. *The Vanadis,* 250 Fed. 1010 (N. Y. D. C. 1918); *Cook v. Packard Motor Car Co. of New York, supra; Stephens v. Foster,* 46 Ariz. 391, 51 P. (2d) 248 (1935); *Meyers v. Bradford,* 54 Cal. App. 157, 201 Pac. 471 (1921); McCormick, Damages § 124, 472 (1935).

The plaintiffs were entitled to have this issue submitted to the jury under appropriate instructions.

The plaintiffs assign error to the court's refusal, in this regard, to give the following requested instruction:

"If your verdict is in favor of plaintiffs, Frank S. Holmes and Neva A. Holmes, then in assessing the amount of recovery you will award them such sum as will reasonably compensate them for being deprived of the use of their automobile during the time necessarily consumed in repairing the damage proximately resulting from the accident. *That sum is the reasonable rental or use value of the automobile for the period of time just mentioned.*" (Italics ours.)

This constitutes an instruction for special damages. The court did not err in refusing to give the requested instruction, for the reason that a substitute automobile was not rented. Had the last sentence of the instruction been deleted, the remainder could properly have been given as it applied to general damages. *Stephens v. Foster, supra.* This would constitute appropriate language in a general damage instruction upon the remand for a new trial on this issue.

The plaintiffs further contend, however, that the trial court erred in submitting the issues of unavoidable accident and contributory negligence to the jury for the reason these issues were not supported by evidence in the record. It is argued that the improper consideration of these issues could have resulted in a compromise verdict on the damages allowed in view of the small award. Assuming, *arguendo,* the issues of unavoidable accident and

contributory negligence were improperly submitted we find nothing in the record to indicate a compromise verdict in the jury's award. The error, if any, in the submission of these issues, was cured by the verdict.

In view of our disposition of this case, it is unnecessary for us to consider any further assignments of error.

The judgment of the trial court entered upon the verdict in favor of the plaintiffs against the minor defendant is affirmed as to the minor's liability, and is remanded for a new trial solely on the issue of general damages sustained by the plaintiffs for loss of use of the automobile. The judgment upon the verdict in favor of the defendants Carl Raffo and wife is reversed and remanded for a new trial on the question of their vicarious liability. The items of damages which were submitted to the jury in the first trial are fixed by the verdict, and should be awarded against the defendants Carl Raffo and wife together with additional damages for loss of use of the automobile, if any, in the event the jury finds them liable to the plaintiffs for their minor son's negligence.

Cost of this appeal will abide the final result of the cause.

ALL CONCUR.